1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

10

11

12

13

14

| | | |
|---|---|---|
| MATTHEW D. JONES, | ) | |
| | ) | |
| Petitioner, | ) | CASE NO.    C08-414-RSM-JPD |
| | ) | (CR04-543-RSM) |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

15

INTRODUCTION AND SUMMARY CONCLUSION

16

Petitioner Matthew Jones is a federal prisoner who is currently incarcerated at the Federal

17

Prison Camp at Lompoc, California.  He has filed a motion pursuant to 28 U.S.C. § 2255 seeking to

18

vacate, set aside, or correct the sentence imposed upon him following his federal conviction on a

19

charge of wire fraud.  The government has filed a response to petitioner's § 2255 motion and

20

petitioner has filed a reply brief in support of his motion.  After careful consideration of petitioner's

21

motion, the briefs of the parties, and the balance of the record, this Court concludes that petitioner's

22

§2255 motion should be denied.

23

24

FACTS

25

On December 9, 2004, the grand jury returned an indictment charging petitioner with one

26

count of wire fraud.  (CR04-543-RSM, Dkt. No. 1.)  The grand jury subsequently returned a

superseding indictment charging petitioner with one count of wire fraud and three counts of money laundering. (CR04-543-RSM, Dkt. No. 10.) On June 16, 2005, petitioner entered a plea of guilty to one count of wire fraud, in violation of 18 U.S.C. § 1343, before the Honorable Mary Alice Theiler, United States Magistrate Judge. (*Id.*, Dkt. No. 27.) Petitioner's plea was entered pursuant to a plea agreement which set forth a detailed statement of agreed facts in support of the guilty plea. (*Id.*, Dkt. No. 29 at 5.) The facts agreed to by the parties are as follows:

a.      Sometime in 2000, MATTHEW D. JONES learned of a vehicle sales scheme known as the "Miracle Car Deal" from certain individuals, including Gwendolyn Baker and Corrine Conway. Baker, Conway and others represented to JONES that a wealthy individual had recently deceased and left his estate fleets of luxury cars. The estate, in turn, was seeking to sell the vehicles at deeply discounted prices to avoid tax consequences. Vehicles available for sale included Lincoln Navigators for a purchase price of $10,000; Lexus LS400s for the purchase price of $11,200; Ford Expeditions for the purchase price of $4,000; and Cadillac Escalades for the purchase price of $13,000. The representations of Baker, Conway and others, however, were false. Neither the estate nor the cars existed.

b.      Beginning sometime in 2001, JONES solicited purchasers in the Miracle Car Deal. JONES represented or caused to be represented to potential buyers that he would collect the money from the purchasers for safe-keeping and that no money would be turned over to the estate until the vehicles were delivered.

c.      Beginning sometime in May 2001, and continuing through March 2002, approximately 45 individuals from the Western District of Washington, and elsewhere, paid JONES approximately $1.3 million toward the purchase of vehicles in the Miracle Car Deal. For example, on February 14, 2002, a victim residing in California caused the wire transfer of $33,000 from a Wells Fargo account located in California, to a Wells Fargo account in Seattle, Washington, in the name of Matt Jones, toward the purchase of vehicles in the Miracle Car Deal.

d.      Contrary to his representations and promises, JONES did not keep the money entrusted to him by the Miracle Car Deal participants for safe-keeping, but, rather, diverted the funds for his own personal use and benefit, including, but not limited to, making payments toward the purchase of real property in the San Juan Islands and making payments for staff, consultants, and other services in an effort to develop JONES's personal business ventures.

REPORT AND RECOMMENDATION
PAGE - 2

e.     In February, March and April of 2002, JONES was interviewed approximately four separate times by federal agents in connection with an investigation into the Miracle Car Deal and its promoters, including Corrine Conway and Gwendolyn Baker.  At no point during this time did JONES inform any of his victims that the Miracle Car Deal was under federal investigation nor did he offer to return the money to the victims.

f.     Sometime in July 2002, a federal indictment in the District of Missouri of the original promoters of the Miracle Car Deal, including Corrine Conway and Gwendolyn Baker, was made public.  When the victims who had paid JONES to participate in the Miracle Car Deal discovered the fraud, they requested refunds.  Rather than return the money, however, JONES falsely represented and caused to be represented that the money had been placed in an off-shore account and that the federal government had seized the money.  To the contrary, JONES had spent the victims' money for his own personal use and benefit.

(CR04-543-RSM, Dkt. No. 29 at 5-6.)

During the plea colloquy, counsel for the government summarized this factual stipulation.  (*Id.*, Dkt. No. 57 at 10-11.)  The Court thereafter asked if the defendant agreed with the summary and defense counsel responded that while they did not dispute the government's summary, it was their understanding that "when [petitioner] first became aware of and involved in the Miracle Car Deal, he did not know there was anything fraudulent about it."  (*Id.*, Dkt. No. 57 at 11.)  Petitioner's counsel went on to explain as follows:

It's our understanding that, and our belief, that in looking at the statute that his criminal guilt is that after he had received this very significant amount of money, that he disposed of it in a way that was inconsistent with applying it on car purchases and then he made false representations to those people that had given him the money as to what had happened.  He told them that the government had seized it.  That was clearly a misrepresentation.  So stated simply, we believe he acquired the money in good faith, but he disposed of it unlawfully and used the wires to misrepresent to the owners of the funds what had happened to the money.

(*Id.*, Dkt. No. 57 at 11-12.)

Petitioner indicated that he agreed with his counsel's representations and he also acknowledged that he had carefully reviewed the statement of facts, and that he agreed with those

REPORT AND RECOMMENDATION
PAGE - 3

facts. (CR04-543-RSM, Dkt. No. 57 at 12.)

Following the colloquy, petitioner formally entered his plea to the charge of wire fraud. (*Id.*, Dkt. No. 57 at 15.) Judge Theiler found that the plea was made knowingly, intelligently and voluntarily and that there was a factual basis to support the plea. (*Id.*) Judge Theiler indicated that she would therefore recommend that petitioner be found guilty and that sentence be imposed. (*Id.*) Petitioner's sentencing hearing was scheduled for September 2, 2005, before the Honorable Ricardo S. Martinez, United States District Judge. (*Id.*, Dkt. No. 15.) Petitioner's plea was accepted by Judge Martinez on July 5, 2005. (*Id.*, Dkt. No. 38.) The sentencing hearing was thereafter continued twice at the request of petitioner. (*See id.*, Dkt. Nos. 42 and 47.)

On December 7, 2005, two days before petitioner was to be sentenced, petitioner filed a motion to withdraw his guilty plea. (*Id.*, Dkt. No. 52.) Petitioner asserted in his motion to withdraw that, at the time he entered his guilty plea, he misunderstood the elements the government would be required to prove in order to establish his guilt on the charge of wire fraud. (*Id.*) He further asserted that the facts he admitted to in entering his plea did not satisfy all of the elements of the charge of wire fraud, and that he was therefore innocent of the offense to which he pleaded guilty. (*Id.*) Petitioner argued that these constituted "fair and just reasons" to withdraw his plea. (*Id.*)

On January 6, 2006, Judge Martinez denied petitioner's motion to withdraw his plea, finding that petitioner had not established a fair and just reason to grant the withdrawal. (*Id.*, Dkt. No. 78 at 16.) Judge Martinez noted in making his ruling that the facts admitted by petitioner during the plea colloquy supported a finding of guilt and that petitioner's motion to withdraw had merely identified a new theory under which to defend against the government's charges. (*Id.*)

REPORT AND RECOMMENDATION
PAGE - 4

After denying petitioner's motion to withdraw his guilty plea, Judge Martinez inquired of defense counsel whether he was ready to proceed to sentencing.  (CR04-543-RSM, Dkt. No. 78 at 18.)  Defense counsel stated that he was and the sentencing portion of the hearing proceeded.  (*Id.*)  After hearing from counsel, and from petitioner,  Judge Martinez sentenced petitioner to 42 months incarceration.   (*Id.*, Dkt. No. 78 at 18-35.)

Petitioner appealed the denial of his motion to withdraw his plea to the Ninth Circuit Court of Appeals.  *See United States v. Matthew Jones*, 472 F.3d 1136 (9th Cir. 2007).  Petitioner argued on appeal that the district court abused its discretion in denying his motion to withdraw his guilty plea when petitioner did not learn until after he entered his plea that the factual basis set forth in the plea agreement did not satisfy the elements of wire fraud, and when he specifically denied during the course of the plea colloquy that he intended to deprive the victims of money or property at the time he initially obtained the money.  (*See* Dkt. No. 7-8.)

On January 10, 2007, the Court of Appeals affirmed the district court's decision.  *Jones*, 472 F.3d at 1141.  The Court of Appeals concluded that petitioner's conduct did, in fact, fall within the ambit of the wire fraud statute, explaining that "[a]lthough, per the plea agreement, Jones did not possess a fraudulent intent when he received the money, his fraudulent appropriation of the funds still satisfies the elements of § 1343."  *Id*. at 1140.  The Court of Appeals further concluded that petitioner's challenge to the validity of his guilty plea was without merit because it was based upon his misinterpretation of the wire fraud statute.  *Id*.  Finally, the Court of Appeals concluded that the district court did not abuse its discretion in denying petitioner's motion to withdraw his guilty plea because the only argument offered in support of the claim was, again, petitioner's inaccurate interpretation of the law.  *Id*.

REPORT AND RECOMMENDATION
PAGE - 5

On March 11, 2008, petitioner filed the instant § 2255 motion.  Petitioner identifies two grounds for relief in his motion: (1) new evidence, and (2) ineffective counsel.  (*See* Dkt. No. 1 at 14-15.)  The briefing in this matter is now complete and petitioner's § 2255 motion is ripe for review.

<u>DISCUSSION</u>

<u>New Evidence</u>

Petitioner asserts in his first ground for relief that he has new evidence now available to him, which he discovered just prior to his sentencing hearing, which demonstrates that he is innocent of the wire fraud charge to which he pleaded guilty.  According to petitioner, the new evidence proves that he was not responsible for the initial misrepresentations made to victims of the Miracle Car Deal to the effect that their money would be placed in a trust/custodial account until the vehicles they sought to purchase were delivered.  (*See* Dkt. No. 1 at 15-16.)  Petitioner claims that it was an individual by the name of Lynn Burnett who made those misrepresentations and that he cannot be held responsible for Mr. Burnett's conduct.  (*Id.*)

The government argues in its brief in opposition to petitioner's § 2255 motion that petitioner's claim of "new evidence" is not cognizable in these collateral proceedings because his conviction was obtained pursuant to a valid plea.  The government further argues that petitioner cannot re-litigate the validity of his plea in these proceedings because the district court and the Ninth Circuit have already rejected petitioner's efforts to overturn his plea.  This Court agrees.

The United States Supreme Court has made clear that the circumstances under which a guilty plea may by attacked on collateral review are "strictly limited" because the concern with finality "has special force with respect to convictions based on guilty pleas."  *Bousley v. United States*, 523 U.S. 614, 621 (1998) (quoting *United States v. Timmereck*, 441 U.S. 780, 784 (1979)).  Thus, on collateral

REPORT AND RECOMMENDATION
PAGE - 6

review, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569 (1989).  A guilty plea is voluntary only if the defendant was made fully aware of the direct consequences of the plea and the plea was not the result of threats, misrepresentations, or improper promises. *Brady v. United States*, 397 U.S. 742, 755 (1970).

Petitioner offers no evidence in these proceedings which would call into question the validity of his guilty plea.  During the plea hearing, petitioner acknowledged that he understood the charge against him, the elements the government would have to prove if he went to trial instead of pleading guilty, and the possible penalties he was facing.  Petitioner also acknowledged during the course of the proceeding that he was fully satisfied with the representation he had received from his attorney, Steve Moen, that he had had sufficient time to discuss with counsel the charges and possible penalties, the facts of the case, and the provisions of the plea agreement.  (CR04-543-RSM, Dkt. No. 57 at 5.) Petitioner expressly denied that anybody had pressured him into pleading guilty.  (*Id.*, Dkt. No. 57 at 14.)  Petitioner also acknowledged that the decision to plead guilty was his alone.  (*Id.*)

Petitioner's declarations that he understood the charges, that he understood and accepted the terms of the plea agreement, that he was satisfied with the representation of counsel, that he was not pressured into entering his plea, and that the decision to plead guilty was his, which were all made in open court at the time petitioner entered his guilty plea, carry a strong presumption of verity. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  Petitioner offers nothing in these proceedings to rebut this presumption.

Petitioner's new evidence, which he maintains would have affected his decision to plead guilty had it been available to him prior to the time he entered his plea, pertains only to the conduct of Lynn

REPORT AND RECOMMENDATION
PAGE - 7

Burnett and misrepresentations made by Mr. Burnett to investors, prosecutors, investigators, and the courts. While this evidence might have provided petitioner an additional basis on which to defend against the government's charges, it provides no basis upon which to attack the validity of his guilty plea. In *Brady*, the Supreme Court made clear that "[a] defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action." *Brady*, 397 U.S. at 757.

To the extent petitioner contends that Mr. Burnett's misrepresentations influenced the government's case against petitioner, petitioner fails to recognize that he entered a guilty plea to conduct which he alone was responsible for. Regardless of any misrepresentations Mr. Burnett may have made to induce investors to participate in the Miracle Car Deal, or misrepresentations made to federal law enforcement during the subsequent investigation into the Miracle Car Deal, petitioner alone made the misrepresentations to investors that money which had been entrusted to him had been seized by the government. The Ninth Circuit Court of Appeals, on direct appeal, made clear that petitioner's admission that he fraudulently appropriated the money, even though he did not possess a fraudulent intent when he received the money, was sufficient to satisfy the elements of the wire fraud charge. This Court will not revisit that conclusion. *See United States v. Redd*, 759 F.2d 699, 701 (9th Cir. 1985) (claim raised and rejected on direct appeal cannot be the basis of a § 2255 motion).

For the foregoing reasons, petitioner's § 2255 motion should be denied with respect to his claim of new evidence.

<u>Ineffective Assistance of Counsel</u>

Petitioner asserts in his second ground for relief that he was denied the effective assistance of

REPORT AND RECOMMENDATION
PAGE - 8

counsel when the attorney who represented him for purposes of his motion to withdraw his guilty plea, Alan Ellis, refused to submit petitioner's newly discovered evidence to the Court in support or his motion to withdraw his plea. Petitioner further asserts that Mr. Ellis was not prepared to adequately represent him at the sentencing hearing.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth in *Strickland*. Under *Strickland*, a defendant must prove (1) that counsel's performance fell below an objective standard of reasonableness and, (2) that a reasonable probability exists that, but for counsel's error, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 688, 691-92.

When considering the first prong of the *Strickland* test, judicial scrutiny must be highly deferential. *Strickland*, 466 U.S. at 689. There is a strong presumption that counsel's performance fell within the wide range of reasonably effective assistance. *Id*. The Ninth Circuit has made clear that "[a] fair assessment of attorney performance requires that every effort by made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Campbell v. Wood*, 18 F.3d 662 (9th Cir. 1994) (quoting *Strickland*, 466 U.S. at 689). The second prong of the *Strickland* test requires a showing of actual prejudice related to counsel's performance. *Strickland*, 466 U.S. at 693. The reviewing Court need not address both components of the inquiry if an insufficient showing is made on one component. *Id*. at 697. Furthermore, if both components are to be considered, there is no prescribed order in which to address them. *Id*.

*a.     Failure to Present New Evidence*

Petitioner faults counsel for failing to present to the Court in support of his motion to withdraw his guilty plea the newly discovered evidence regarding Mr. Burnett's conduct and credibility.  Petitioner is of the belief that this evidence would have provided critical support for counsel's argument that petitioner should be granted leave to withdraw his guilty plea because his conduct did not, in fact, satisfy the elements of wire fraud.

The record reflects that Mr. Ellis argued to the Court that the facts which petitioner admitted at the time of his guilty plea did not satisfy the "scheme to defraud" element of the wire fraud statute. In support of that argument, counsel noted that it was Mr. Burnett who was primarily responsible for communication with investors and that if investors were deceived it was by Mr. Burnett and not by petitioner.  While counsel did not submit to the Court any evidence detailing Mr. Burnett's participation in the investigation of the Miracle Car Deal and subsequent litigation arising out of the Miracle Car Deal, such evidence would not have changed the result.  Both Judge Martinez and the Court of Appeals rejected the argument that the conduct to which petitioner admitted did not fall within the ambit of the wire fraud statute.  Evidence regarding Mr. Burnett's role in the Miracle Car Deal and/or his credibility was simply not relevant.  Accordingly, the first part of petitioner's ineffective assistance of counsel claim must fail.

*b.     Sentencing*

Petitioner next contends that Mr. Ellis was not adequately prepared at sentencing to present to the court evidence regarding petitioner's innocence, evidence detailing petitioner's three year contribution to a related federal criminal action in Kansas City, evidence that one of the leaders of the Miracle Car Deal scheme had ordered petitioner to retain car investment funds as payment for his

REPORT AND RECOMMENDATION
PAGE - 10

years of service as a "finder," and, information regarding the sentencing of other Miracle Car Deal participants.  Petitioner also contends that he was not supplied with the probation sentencing recommendation or the victim impact letters.

The transcript of petitioner's sentencing hearing reveals that Mr. Ellis, during his presentation to the Court, emphasized again that petitioner acted in good faith when he took the investors' money and reiterated that it was Mr. Burnett who was primarily responsible for misrepresentations made to investors regarding what was to be done with their money.[1]  (CR04-543-RSM, Dkt. No. 78 at 20.) Counsel also emphasized petitioner's cooperation in the Kansas City case and encouraged the Court to take that cooperation into consideration when imposing sentence.  Petitioner offers nothing to suggest that counsel would have obtained a better result for petitioner had he presented additional evidence in support of these arguments.

Petitioner also faults Mr. Ellis for failing to present evidence that one of the leaders of the Miracle Car Deal scheme, Gwendolyn Baker had, in fact, ordered him to retain car investment funds as payment for his years of service as a "finder."  The evidence he refers to is an undated e-mail to Mr. Ellis from Ms. Baker's attorney which indicates that Ms. Baker  "would *on occasion* tell 'finders' to keep proceeds from the sale of 'estate cars' for their commission.  Matt Jones was considered a 'finder' by Ms. Baker."  (*See* Dkt. No. 9, Ex. 1 (emphasis added).)  Petitioner believes that Mr. Ellis should have made the Court aware of this "mitigating evidence."

However, the record reflects that Mr. Ellis did, in fact, present this issue to the Court at sentencing, explaining that Ms. Baker had told petitioner to keep the money given to him by investors

---

[1]  Petitioner's "innocence" was, of course, no longer an issue at the time of sentencing. Counsel could, at that point, only argue factors in mitigation.

REPORT AND RECOMMENDATION
PAGE - 11

since he was owed money as a finder.  (*See* CR04-543-RSM, Dkt. No. 78 at 20-21).  The Court clearly did not find the representation credible in light of contradictory statements from the victims that petitioner had told them that the money was going to be kept safe in a trust account until the vehicles were delivered.  (*See id.*, Dkt. No. 78 at 34.)  It appears unlikely that the e-mail, even if presented, would have altered the outcome of the proceedings.[2]

With respect to information regarding the sentencing of other Miracle Car Deal participants, the record reflects that while counsel did not argue that issue, petitioner, during his statement to the Court, called the Court's attention to the fact that one of the major participants in the Miracle Car Deal received a sentence of only 14 months despite her greater role in the investment scam.  (*Id.*, Dkt. No. 78 at 29.)  This Court questions how relevant such information was to petitioner's sentencing since petitioner was not being sentenced for his role in the Miracle Car Deal.  Regardless, however, the factor was before the Court for consideration and, thus, counsel's failure to raise the issue cannot be deemed prejudicial.

As to petitioner's final contention, it was revealed at the time of sentencing that petitioner's counsel had not received the probation officer's sentencing recommendation, and that he had not been provided copies of the victim impact statements.  (*See id.*, Dkt. No. 78 at 23-24.)  Counsel was

---

[2] Petitioner asserts for the first time in his reply brief that Mr. Moen, who represented petitioner during his plea proceedings, could have discovered this evidence regarding Ms. Baker's payment instructions through minimal investigation and that it would have provided petitioner a complete defense to the charge; *i.e.*, good faith. (Dkt. No. 9 at 4.)  Petitioner argues that counsel's failure to address this key mitigating fact contaminated the entire plea process.  However, in order to satisfy the "prejudice" requirement of the *Strickland* standard in the context of guilty pleas, a petitioner must demonstrate that it is reasonably probable that, but for counsel's errors, "he would not have pleaded guilty and would have insisted on going to trial."  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  Petitioner makes no such showing.  Accordingly, petitioner's claim that Mr. Moen rendered ineffective assistance must fail as well.

REPORT AND RECOMMENDATION
PAGE - 12

thereafter provided a copy of the recommendation and was given an opportunity to review it.  (CR04-543-RSM, Dkt. No. 78 at 23-24.)  While copies of the victim impact statements were not immediately provided, the Court did read portions of the victim impact statements during the proceeding prior to providing petitioner an opportunity to speak on his own behalf.  (*Id.*, Dkt. No. 78 at 24-26.) Petitioner did not request additional time to review those statements and instead proceed directly to his own statement.  Petitioner makes no showing that counsel's failure to obtain the sentencing recommendation or the victim impact statements earlier had any affect on the outcome of the sentencing hearing.

For the foregoing reasons, the second portion of petitioner's ineffective assistance of counsel claim should also be denied.

<u>CONCLUSION</u>

As none of petitioner's claims has merit, petitioner's § 2255 motion should be denied.  A proposed Report and Recommendation is attached.

DATED this 19th day of May, 2008.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 13